In re Sean P. DRUMM, Debtor.

Sean P. Drumm, Plaintiff,

v.

New England Loan Marketing Association, Defendant.

Bankruptcy No. 01–11545.
Adversary No. 01–1107.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 19, 2005.

concerns are no longer implicated, and therefore, they provide no support for continuing the stay.

Stephen H. Hutzelman, Erie, PA, for Debtor.

Michael J. Graml, Erie, PA, for Debtor.

James A. Georges, Philadelphia, PA for New England Loan Marketing Association.

*OPINION*

WARREN W. BENTZ, Bankruptcy Judge.

*Introduction*

Sean P. Drumm ("Debtor") filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on August 3, 2001. Debtor was represented at the time of filing by Attorney Michael J. Graml ("Attorney Graml"). On December 10, 2001, Debtor, through Attorney Graml, filed the within COMPLAINT TO DETERMINE DISCHARGEABILITY OF A STUDENT LOAN PURSUANT TO 11 U.S.C. § 523(a)(8) (the "Complaint") against New England Loan Marketing Association ("New England"). In the Complaint, Debtor sought the entry of "an order declaring the student loan debt of the Debtor to be discharge able (sic) in this bankruptcy case."

By Order dated October 10, 2002, Summary Judgment was entered against Debtor on the Complaint and in favor of New England on its Counterclaim for the full amount of Debtor's student loans plus costs and attorney's fees.

About 71 days later, on December 20, 2002, Debtor filed a Motion for Reconsideration of the October 10 Order. By Order dated November 26, 2003, Debtor's Motion for Reconsideration was refused and Debtor appealed our decision to the United States District Court ("District Court").

The matter is again before us upon remand from the District Court by Memorandum and Order dated April 13, 2004 with directions that we clarify our basis for refusing Debtor's Motion for Reconsideration.

*Procedural Background*

Debtor filed the Complaint on December 10, 2001 to seek a discharge of his student loan obligations to New England under 11 U.S.C. § 523(a)(8). New England filed an Answer, Affirmative Defense and Counterclaim. New England opposed the relief sought by Debtor and requested a judgment in its favor for the full amount of the outstanding loans which it alleged was

$95,954.09 as of April 17, 2001 and for continuing interest, late fees, and attorney's fees.

An initial hearing was held on March 18, 2002. Attorney Graml and counsel for New England entered appearances. Discovery was opened and a status conference was fixed for June 17, 2002.

On May 28, 2002, New England filed a MOTION TO COMPEL ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND SECOND REQUEST FOR PRODUCTION OF DOCUMENTS ("Motion to Compel"). The Motion to Compel was granted by Order dated May 28, 2002. Debtor was afforded an additional 30 days to respond.

A status conference was held on June 17, 2002. Attorney Graml advised the Court that the Debtor had delivered the required information and advised that the discovery responses would be completed the following week. A continued status conference was fixed for September 9, 2004.

On July 22, 2002, New England filed a MOTION OF DEFENDANT, NEW ENGLAND LOAN MARKETING ASSOCIATION, FOR SUMMARY JUDGMENT AND APPROPRIATE SANCTIONS AGAINST PLAINTIFF, SEAN P. DRUMM ("Motion for Summary Judgment").

On September 9, 2002, we held the previously scheduled status conference on the Complaint and a hearing on the Motion for Summary Judgment at which Attorney Graml appeared for Debtor along with counsel for New England. By Order dated September 12, 2002, Debtor was directed to respond to the Motion for Summary Judgment and to provide answers to New England's long outstanding interrogatories by September 30, 2002. The Order further directed New England to notify the Court if the Debtor did not respond to its interrogatories by September 30. On October 4, New England filed a pleading to inform the Court that Debtor had not responded to its interrogatories or filed any response to the Motion for Summary Judgment.

On October 10, 2002, we entered the following Order:

AND NOW, this 10th day of October, 2002, upon consideration of the Motion of Defendant, New England Loan Marketing Association for Summary Judgment and Appropriate Sanctions Against Plaintiff, Sean P. Drumm ("Motion"), it is hereby ORDERED AND DECREED that:

1. The Motion is GRANTED; and

2. That Judgment is Entered for Defendant, New England Loan Marketing Association and against Plaintiff, Sean P. Drumm, on Plaintiff's claim; and

3. That Judgment is entered in favor Counterclaim Plaintiff, New England, and against Counterclaim Defendant, Sean P. Drumm, on the Counterclaim of New England Loan Marketing Association.

By letter dated November 5, 2002, New England sought quantification of its Judgment in the amount of $119,326.29, including principal of $89,352.12, interest through October 10, 2002 of $16,617.15 and attorney's fees of $13,357.02. By Order of November 7, 2002, New England was directed to file "documentation in the nature of a fee application" to substantiate the amount of the requested attorney's fee, and a hearing was fixed for December 16, 2002.

On November 25, 2002, New England filed an APPLICATION...TO QUANTIFY JUDGMENT AND DOCUMENTATION IN NATURE OF FEE APPLICATION ("Application").

After receipt of a letter directly from the Debtor dated December 6, 2002 in which Debtor indicated that he was seeking replacement counsel, the December 16 hearing was changed to a status conference. Attorney Stephen H. Hutzelman ("Attorney Hutzelman") appeared at the status conference on behalf of the Debtor. Attorney Hutzelman indicated that he would file an appropriate motion and the matters were continued to a further status conference on January 7, 2003.

On December 20, 2002, Debtor, through Attorney Hutzelman filed a MOTION FOR RECONSIDERATION OF ORDER DATED OCTOBER 10, 2002 GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ("Motion for Reconsideration") and a RESPONSE TO APPLICATION FOR ATTORNEY'S FEES.

We held status conferences on January 7, and January 27, 2003 at which the Court heard arguments of counsel.

The parties were afforded time to file briefs. Debtor, through Attorney Hutzelman, filed a MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION and the Lender filed a responsive brief.

By Order dated November 26, 2003, we allowed New England's Application for Attorney's Fees in the reduced amount of $10,000 and refused Debtor's Motion for Reconsideration. Debtor filed a notice of appeal and a Statement of Issues on Appeal. Debtor did not appeal the amount of the attorney's fees awarded New England. The Issues presented to the United States District Court were:

1) Whether the debt owed to New England Loan Marketing Association is a guaranteed student loan excluded from discharge under the Bankruptcy Code?

2) Whether the Court should reconsider its granting of a Motion for Summary Judgment in favor of the Defendant on the grounds that the matters was (sic) mischaracterized in said Motion?

By Memorandum Opinion and Order dated April 13, 2004, the matter was remanded to this Court with directions to clarify the basis for our refusal of Debtor's Motion to Reconsider.

Following remand, a status conference was held on May 10, 2004 to determine whether there was any need for an evidentiary hearing. Attorney Hutzelman, on behalf of the Debtor, suggested that an evidentiary hearing was required. By Order dated November 17, 2004, an evidentiary hearing was fixed for February 2, 2005 to hear evidence on:

1. whether there is evidence to support a grant of relief from judgment or order under Fed.R.Civ.P. 60(b) made applicable in bankruptcy cases by Fed. R.Bankr.P. 9024; and

2. whether the student loans at issue were "insured or guaranteed by a governmental unit or made under any program funded in whole or in part by a governmental unit or nonprofit institution."

Due to discovery issues, the evidentiary hearing was rescheduled first to April 20, 2005, then until June 9, 2005. On June 6, 2005, the Court was advised that the parties would file a Stipulation of all of the facts necessary for resolution of the Debtor's Motion for Reconsideration and that an evidentiary hearing was not necessary.

We fixed a briefing schedule and following the filing of the Stipulation of Fact and Briefs by the Plaintiff and Defendant, argument was held on July 20, 2005.

The matter is now ripe for decision.

### Stipulation of Fact

We quote herein the facts as set forth in the Stipulation of Fact:

1. On November 28, 1999, Mr. Drumm executed the Note attached hereto as Exhibit "A" and received a student loan.

2. On December 16, 1999, Mr. Drumm executed the Note attached hereto as Exhibit "B" and received a second student loan (the student loans referred to in paragraphs 1 and 2 are referred to collectively as the "Loans").

3. The Loans were obtained by Mr. Drumm so that he and a friend could attend a flight school located in Florida.

4. Mr. Drumm and his friend did not qualify for a federally funded student loan because they were attending a school that was not approved to received such loans.

5. At the time the Loans were extended to Mr. Drumm, an Agreement attached hereto as Exhibit "C" existed between the Nellie Mae Corporation, a Delaware for profit corporation, and the Nellie Mae Foundation, a Massachusetts non-profit corporation. The Loans would not have been made without the existence of the Agreement attached as Exhibit "C".

6. The Nellie Mae Foundation is a Massachusetts non-profit corporation engaged in a number of activities related to the promotion of higher education.

7. A copy of the Agreement attached hereto as Exhibit "C" by and between the Nellie Mae Corporation and the Nellie Mae Foundation was first provided to Plaintiff and/or his attorney on or about January 3, 2003.

8. At the time Mr. Drumm's loans were originated, the Nellie Mae Corporation was engaged in the marketing of student loans, and in this regard offered not only the privately funded (but subject to the Exhibit "C" Agreement) Excel Loan that Mr. Drumm received, but also offered student loans originated under programs fully funded and/or insured by the federal government, including, but not limited to PLUS and Stafford loans.

9. Pursuant to the terms of the Agreement (Exhibit "C"), Nellie Mae Foundation established and maintained a reserve account for Mr. Drumm's Loans as well as other Loans originated by the Nellie Mae Corporation during the same year. Other than funds held in this specific reserve account for that particular year, no funds were advanced by the Nellie Mae Foundation with respect to Mr. Drumm's Loans other than from the reserve account following his default.

10. Following the filing of Mr. Drumm's bankruptcy petition, the Loans were assigned to the Nellie Mae Foundation for collection pursuant to the Agreement.

11. On or about March 30, 2004, the Loans were assigned by the Nellie Mae Foundation to SLM–ECF.

*Discussion*

*A. Relief from Judgment*

█ Debtor bears the burden of proof in a complaint seeking discharge of a student loan. *In re Brightful,* 267 F.3d 324 (3d Cir.2001). Debtor initiated the within Complaint and then failed to respond to discovery requests or to New England's Motion for Summary Judgment. After multiple hearings and after affording Debtor numerous and repeated opportunities to respond or otherwise comply, an order granting Summary Judgment in favor of New England and against the Debtor on all claims was entered on October 10, 2002.

█ Our Order of October 10, 2002 was a final order which completely fixed the rights of the parties to the relief sought. The Order was a final determination that Debtor's obligation to New England was

nondischargeable under § 523(a)(8) and that Debtor would remain obligated after the conclusion of the bankruptcy for the full balance due on the student loans, plus continuing interest, late fees and attorney's fees.[1] We anticipated no further involvement and New England was free to pursue its rights and remedies under its loan documents following the bankruptcy. A decision on the merits is a final decision subject to appeal whether or not attorney fees have been quantified. *In re Colon,* 941 F.2d 242 (3d Cir.1991) *citing Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988).

On December 20, 2002, Debtor filed his Motion for Reconsideration of the Order dated October 10, 2002.

> [A] motion for reconsideration is not recognized under the Federal Rules of Civil Procedure. *See Inge v. Rock Fin. Corp.,* 281 F.3d 613, 617 (6th Cir.2002); *In re Long,* 255 B.R. at 244. Federal Rules of Bankruptcy Procedure 9023 makes Fed. R.Civ.P. 59 applicable to bankruptcy cases, except as provided in Fed. R. Bankr.P. 3008; Rule 3008 is inapplicable in this case. Federal rules of Bankruptcy Procedure 9024 makes Fed.R.Civ.P. 60 applicable to bankruptcy cases. Therefore, the bankruptcy court properly viewed Hogan's motion as a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59 or, in the alternative, as a motion for relief from judgment pursuant to Fed.R.Civ.P. 60.

*In re Hogan,* 79 Fed.Appx. 846 (6th Cir. 2003).

 Fed.R.Bankr.P. 3008 is likewise inapplicable here. It applies when a party moves for reconsideration of an order allowing or disallowing a claim against the estate. A motion for a new trial or amendment of judgment under Fed.R.Civ.P. 59 must be filed no later than 10 days after entry of the judgment. Fed.R.Civ.P. 59(b). Debtor's Motion for Reconsideration was filed more than 10 days after the October 10, 2002 Order so it cannot be treated as a motion for reconsideration subject to Fed.R.Civ.P. 59.

Fed.R.Civ.P. 60(b) provides for relief from a judgment or order in certain circumstances:

> Rule 60. Relief from Judgment or Order.
>
> . . .
>
> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered.

---

**1.** All references to Code sections are to Title 11 of the United States Code unless otherwise indicated.

tered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. . . .

Fed.R.Civ.P. 60(b).

Parties seeking review of an order or judgment under Rule 60(b) have a high hurdle to overcome in obtaining relief. *In re Bushman,* 311 B.R. 91 (Bankr. D.Utah 2004). Such a motion is not meant to be a substitute for an appeal. *Id.* "Rule 60(b) seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts'." *Id. quoting Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.,* 715 F.2d 1442, 1444 (10th Cir.1983) (quoting in turn *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir.1981)) (quoting in turn *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.1970) (emphasis in original)).

In the Complaint, the Debtor sought to discharge his student loan obligations under the provisions of § 523(a)(8). Debtor now admits that he cannot meet the standards for discharge under the undue hardship provisions. Debtor instead asserts that other provisions of § 523(a)(8) render the loans dischargeable. Debtor does not assert or allege any new theory or assert that any different statutory provisions are applicable. Debtor relies on the § 523(a)(8), the identical provision cited in his initial complaint. Debtor admits that New England propounded discovery requests to the Debtor and that Debtor did not respond to them. "Debtor maintains that his prior counsel failed to provide him with the discovery requests and information needed to respond on a timely basis" and that "Debtor's prior counsel did not file a response to the Motion for Summary

Judgment." Debtor asserts that New England's counterclaim for the full balance of the loan plus costs and fees was inappropriately granted based on the record before the Court.

Debtor cites no authority for the Motion for Reconsideration in the motion. We must first attempt to discern the basis for the Motion from the arguments Debtor makes. *DeWit v. Firstar Corp.,* 904 F.Supp. 1476, 1496–97 (N.D.Iowa 1995). There are no allegations of fraud, misrepresentation, or misconduct to support relief under Rule 60(b)(3) and no allegation that the judgment is void or has been satisfied, released, or discharged to support relief under 60(b)(4) or 60(b)(5). At a status conference held on May 10, 2004, Attorney Hutzelman provided some clarification when it was indicated that an issue for trial related to the standards for newly discovered evidence under Rule 60(b)(2) and whether the Debtor exercised due diligence in discovering the evidence. Debtor asserts that relief from the judgment is appropriate due to "newly discovered evidence," namely, the Guaranty Agreement between the Nellie Mae Corporation and the Nellie Mae Foundation.

A party moving for relief pursuant to Rule 60(b)(2) must establish that due diligence was exercised to discover the evidence prior to the entry of judgment. *Plisco v. Union Railroad Co.,* 379 F.2d 15, 16 (3d Cir.1967). There is no newly discovered evidence that would not have been available had the Debtor exercised even minimal diligence prior to the entry of judgment. Debtor has not offered any evidence to support the fact that he exercised reasonable diligence and is not entitled to relief from judgment under Rule 60(b)(2).

Debtor does not specifically call our attention to Rule 60(b)(1) which

provides for relief from judgment for the reason of "mistake, inadvertence, surprise or excusable neglect," but does state that the judgment was entered in error for the reason that the documentation attached to the Motion for Summary Judgment did not support entry of the judgment. In essence, the argument is that it was legal error to grant summary judgment. Debtor was represented by counsel and the Court afforded a full and fair opportunity to litigate his claim prior to entry of the judgment. Debtor presents no evidence to the contrary. A motion under Rule 60(b) is not meant as a substitute for appeal. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 173 (3d Cir.2004). "[L]egal error, without more, cannot justify granting a Rule 60(b) motion." *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir.1988). If the Court made a mistake of law and inappropriately entered judgment in favor of New England, Debtor's remedy was to timely file an appeal.

██ If Debtor is entitled to any relief under Rule 60(b), it must be pursuant to the "catchall" ground found in subsection 6, which provides for relief for "any other reason justifying relief from the operation of the judgment." "[T]he Rule 60(b)(6) ground for relief from judgment provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances." *Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir.2002) (citations and quotations omitted).

██ Debtor has professed ignorance as to the various deadlines fixed by this Court that had been missed or ignored and alleged a history of difficulties working with Attorney Graml, which allegations included an ongoing failure by Attorney Graml to communicate with the Debtor to keep him informed about the case on any meaningful level.

The Court of Appeals for the Third Circuit has upheld the grant of relief under Rule 60(b)(6) upon a showing of gross neglect of counsel. *Boughner v. Secretary of Health, Educ. & Welfare*, 572 F.2d 976 (3d Cir.1978).

*Boughner* involved Rule 60(b)(1) and (6) motions seeking to reopen summary judgments in favor of the Secretary in cases involving benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901 et seq. (1982). The ground for relief relied upon by the moving parties was that an attorney who had undertaken to represent a large number of black lung claimants had in effect abandoned 52 such claimants by failing to file responsive pleadings on their behalf in opposition to the government's summary judgment motions. We held that this wholesale abandonment, for which the litigants were in no way responsible, satisfied the exceptional circumstances test of *Ackermann v. United States*[, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950)] *and Vecchione v. Wohlgemuth*[, 558 F.2d 150 (3rd Cir. 1977)], *Boughner*, 572 F.2d at 978.

*In re Fine Paper Antitrust Litigation*, 840 F.2d 188, 195 (3d Cir.1988).

Following removal, Debtor with new counsel was afforded the opportunity to present evidence in support of his Motion for Reconsideration. Debtor offered no evidence to support a claim of gross negligence or misconduct on the part of Attorney Graml. We note that Attorney Graml made numerous appearances in the matter on behalf of the Debtor. We are not free to speculate as to what took place between the Debtor and Attorney Graml in the complete absence of any evidence.

Debtor has failed to satisfy his burden of proving that he is entitled to relief from judgment under any of the provisions of Rule 60(b).

## Nondischargeability

Debtor asserts that the Loans were privately insured and, therefore, fall outside of the category of loans excepted from discharge under § 523(a)(8). More specifically, Debtor asserts that there is no evidence that the Loans were "made under any program funded in whole or in part by a governmental unit or nonprofit institution" as § 523(a)(8) requires.[2]

Section 523(a)(8) provides that a discharge under § 727 does not discharge an individual debtor from any debt:

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8).

There are two reasons that Debtor's educational Loans could be excepted from discharge: (1) overpayments or loans made, insured or guaranteed by a governmental unit or (2) loans made under any program funded in whole or in part by a governmental unit or nonprofit institution.

There is no dispute that Debtor obtained the Loans from New England, a private, for-profit entity, and that the Loans were not insured or guaranteed by a governmental unit. The first category of debt in § 523(a)(8) is not applicable in this case.

The dispute arises under the second category of debt. New England asserts that there are two reasons for finding that the Loans are nondischargeable. It asserts first that the Loans were funded in whole or in part by a non-profit institution. Second, it asserts that the Loans were made under a program funded in whole or in part by a governmental unit.

## Non–Profit Institution

 New England posits that the Loans were guaranteed by the Nellie Mae Foundation ("Foundation"), a Massachusetts not-for-profit corporation formed to assist in the education process.[3] Accordingly, New England posits that the Loans must be considered as having been made "under any program funded in whole or in part by a . . . nonprofit institution" and therefore nondischargeable. Debtor responds that the Foundation did not make any meaningful financial contribution or take any meaningful financial risk such that it could be considered to have funded any educational program.

New England charges borrowers a fee on each loan that it makes during any particular year. The fees are remitted to the Foundation. The Foundation deposits the fees into a reserve account in which

---

**2.** Debtor concedes that he cannot establish "undue hardship" for purposes of § 523(a)(8).

**3.** There does not appear to be any dispute regarding the non-profit status of the Foundation. We note that a court need not conduct an extensive review of the tax-exempt status of the lender. *In re Rodriguez,* 319 B.R. 894 (Bankr.M.D.Fla.2005). "According to *Black's Law Dictionary,* a 'nonprofit corporation' is a 'corporation organized for some purposes other than making a profit, and usually af-

forded special tax treatment . . .' " *Id.* at 897 quoting *Black's Law Dictionary,* (10th Ed.1999 at 367). In *Rodriguez,* "a corporation organized for some purpose other than making a profit—in this instance as a nonprofit corporation making educational loans—and has been accorded special tax treatment by both the Internal Revenue Service and the Massachusetts Department of Revenue" fit the plain meaning of the term "nonprofit institution." *Id.* at 898.

New England retains a security interest. If a loan from that particular year defaults, the Foundation is obligated to pay 100 percent of the principal and accrued interest to New England. The Foundation's obligation to make payment does not extend beyond the balance available in the reserve account nor does the Foundation's obligation extend to any other funds or assets of the Foundation.

New England directs our attention to cases which provide that "Congress intended to include within section 523(a)(8) all loans made under a program in which a nonprofit institution plays any meaningful part in providing funds." *In re McClain*, 272 B.R. 42, 46 (Bankr.D.N.H.2002) *quoting In re Pilcher*, 149 B.R. 595, 598 (9th Cir. BAP 1993) *quoting In re Hammarstrom*, 95 B.R. 160, 165 (Bankr.N.D.Ca. 1989).

In *McClain*, the debtor challenged the applicability of the § 523(a)(8) nondischargeability provision to a nonprofit guarantor of student loans funded by a for-profit entity. The Court states:

Congress used expansive language in its designation of which student loans are non-dischargeable, indicating that the program pursuant to which the loan was made must be funded in part by a non-profit entity, not the loan itself. *See HEMAR Service Corp. of America v. Pilcher (In re Pilcher)*, 149 B.R. 595, 597 (9th Cir. BAP 1993). Further, the language "made under any program funded in whole or in part by . . . a nonprofit institution," indicates that "Congress intended to include within section 523(a)(8) all loans made under a program in which a nonprofit institution plays any meaningful part in providing funds." *Id.* (quoting *In re Hammarstrom*, 95 B.R. 160, 165 (Bankr. N.D.Cal.1989) (holding educational loan initially made by commercial bank but immediately purchased by nonprofit organization was nondischargeable, in that parties contemplated from outset that nonprofit organization would purchase loan)).

The loan documentation in this case provides that:

[a]fter The Education Resources Institute, Inc. (hereinafter referred to as "TERI") agrees to guarantee any loan [bank agrees to make to debtor, bank] will send [debtor] a Disclosure Statement. In addition to other information, the Disclosure Statement, which [debtor] agree[s] shall be incorporated in and made part of this Note, will tell [debtor] the amount of [debtor's] disbursement and the amount of [bank's] origination fee and the guaranty fee.

As the above language illustrates, Ameritrust/Key's funding of the loans at issue was conditioned upon TERI's participation in guaranteeing the loans. Thus, TERI played a meaningful part in procurement of the loans, making them nondischargeable pursuant to the language of § 523(a)(8).

*In re McClain*, 272 B.R. 42, 46 (Bankr. D.N.H.2002).

Upon consideration of the dischargeability of a loan in the case of *In re Segal*, 57 F.3d 342 (3rd Cir.1995), the Court of Appeals for the Third Circuit states:

Section 523(a)(8) was again expanded by section 454(a)(2) of the Bankruptcy Amendment Act of 1984, wherein the clause "of higher education" was deleted to eliminate the inference that the section applied only to nonprofit institutions associated with higher education. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, Title III, 454(a)(2), 98 Stat. 333 (Supp. 1984) (amending 11 U.S.C. § 523(a)(8) (1982)). As a result of the 1979 and 1984 amendments, educational loans

made by commercial, for-profit institutions were non-dischargeable if they were insured or guaranteed by a governmental entity, or if the loans were made pursuant to an educational lending program involving a nonprofit institution. *See In re Merchant,* 958 F.2d 738 (6th Cir.1992) (loan made by commercial bank was assigned to a nonprofit university pursuant to an agreement by the university to purchase all defaulted student loans); *In re Pilcher,* 149 B.R. 595 (9th Cir. BAP 1993) (nonprofit entities, while not involved in the debtor's particular loan, were involved in the program by which the loan was made). . . .

*In re Segal,* 57 F.3d 342, 346–47 (3rd Cir. 1995).

Debtor correctly states that the Foundation did not make any meaningful financial contribution or take any meaningful financial risk in connection with the Loans.

 The Foundation, however, must have only "played a meaningful part in procurement of the loans." A meaningful financial contribution or a meaningful financial risk are not required. In *McClain,* the fact that the for-profit entity's funding of the loan was conditioned upon the nonprofit participation in guaranteeing the loans was sufficient for the court to conclude that the non-profit played a meaningful part in procurement of the loans. *McClain,* 272 B.R. at 46.

 Similarly here, the parties stipulate that the Loans would not have been made to the Debtor without the existence of the guaranty agreement between New England and the Foundation. We must conclude that the Foundation played a meaningful part in procurement of the Loans for without its participation, the Loans would not have been made.

*Under a Program Funded in Whole or in Part by a Governmental Unit*

New England's second reason that the Loans are nondischargeable is that the Loans "were made under a program funded in part by a governmental unit." New England posits that although the Loans to the Debtor were made by a private, for-profit entity, the Loans were made as a part of the New England's entire program which included loans to others that were funded by governmental units.

 The proposition of law as set forth by New England is accurate. Section 523(a)(8) does not require that the actual loan itself be funded by a governmental unit, only that the program pursuant to which the loan was made be funded in part by a governmental unit. *See In re Segal,* 57 F.3d at 346–47; *In re McClain,* 272 B.R. at 46; *In re Pilcher,* 149 B.R. at 597–99.

 The parties stipulated that New England had available in its "program" loans that were funded by both private for-profit entities as well as loans funded by governmental units; and that, in this case, the loan to Debtor was privately funded, rather than a government-funded loan only because the school Debtor chose was not qualified to receive governmentally funded loans.

We conclude that the Loans were made under a program funded in part by a governmental unit.

*Conclusion*

Debtor has failed to sustain his burden of proof to show entitlement to relief under Rule 60(b). Further, the Loans at issue qualify for treatment as nondischargeable student loans under § 523(a)(8). Debtor's Motion for Reconsideration will be refused. An appropriate Order will be entered.

*ORDER*

This 19 day of August, 2005, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED that the MOTION FOR RECONSIDERATION OF ORDER DATED OCTOBER 10, 2002, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT is REFUSED.