**In re Christina Fawn KIDD, Debtor.**

**Christina Fawn Kidd, Plaintiff,**

**v.**

**Student Loan Xpress, Inc. and Xpress Loan Servicing, Defendants.**

**Bankruptcy No. 09–74412–MGD. Adversary No. 09–6507.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 16, 2011.

Milton D. Jones, Morrow, GA, for Debtor.

Peter Charles Lown, Harrington & Lown, Stockbridge, GA, for Plaintiff.

David L. Balser, Long, Aldridge & Norman LLP, Ellen Claire Carothers, McKenna Long & Aldridge LLP, Atlanta, GA, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

MARY GRACE DIEHL, Bankruptcy Judge.

Student loans are given special protection from discharge in bankruptcy. 11 U.S.C. § 523(a)(8). This case involves a student who incurred debt to attend a helicopter flight training school. The student was unable to complete her training because the school closed. She sued the school and the lenders in state court and settled the matter, receiving concessions as to the amount and repayment terms of her student loans. She now seeks to discharge that remaining obligation by either having the Court determine her obligation is not a student loan under section 523(a)(8) or by using the claims she settled in state court as a ground for dischargeability. Not surprisingly, the lender objects to these tactics and has moved for partial summary judgement to limit the issues to be tried in this case. Debtor's ability to discharge her loan is governed by section 523(a)(8) and she is limited to arguing the facts relevant to the test set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987). Defendants' motion for partial summary judgment is granted.

### I. Procedural History

Defendants Student Loan Xpress, Inc. and Xpress Loan Servicing ("Defendants") filed a Motion for Partial Summary Judgment ("Motion"). (Docket No. 46). Christina Fawn Kidd ("Plaintiff") filed a Response and Defendants filed a Reply. (Docket Nos. 54 & 59). At Plaintiff's request, oral argument on the Motion was held. (Docket No. 60). Defendants seek judgment as to the following issues: (1) whether the debt at issue is a qualifying educational loan under 11 U.S.C. § 523(a)(8)(A)(i), and if so, (2) whether the state court settlement entered into by Plaintiff limits the facts she may assert in support of an undue hardship defense.

Jurisdiction over this action is set forth in 28 U.S.C. §§ 157(b) and 1334(b). The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and venue is proper. This adversary proceeding has been designated the lead case in a consolidated group of adversary proceedings that raise the same legal issues and factual scenario. (Docket No. 50). The Court's ruling on this Motion will be the law of the case for all consolidated actions [1].

1. *Bui*, 09–6503; *Clark*, 09–6504; *Farmer*, 09– 6505; *Furletti*, 09–6506; *Murdock*, 09–6508;

## II. Undisputed Material Facts

The following are the undisputed facts presented by the pleadings, discovery, other materials on file, and supporting affidavits. Plaintiff filed this action seeking discharge of a debt incurred to finance her training at Silver State Helicopters ("Silver State"), a helicopter flight training school. (Complaint ¶ 4). Plaintiff was notified of her acceptance into Silver State's flight training program in August of 2007. (Plaintiff's Statement of Material Facts ("Plaintiff's SOF") ¶ 6). The flight training program required 18 months to complete and 200 actual flight hours. (Plaintiff's SOF ¶ 5). Plaintiff was enrolled at Silver State for approximately five months. (Joint Stipulation of Facts ("Stipulated Facts") ¶ 1; Docket No. 55). Silver State closed in February 2008 before Plaintiff completed her training. (Plaintiff's SOF ¶ 13; Stipulated Fact ¶ 4). At the time Silver State closed, Plaintiff had received only 18.8 flight hours. (Stipulated Facts ¶ 2).

Plaintiff financed the cost of Silver State's flight training program through the Career Xpress Loan Program ("Loan Program"). (Defendants' Statement of Material Facts "Defendants' SOF" ¶¶ 2 & 16). The Loan Program is comprised of various governmental, non-profit, and private entity participants. (Defendants' SOF ¶ 3). The Loan Program is governed by a Private Loan Program Guarantee Agreement ("Loan Guarantee Agreement") first executed February 1, 2005 by Defendant Student Loan Xpress, Inc. ("SLX"), Lutheran Education Assistance Resource Network ("LEARN"), and Liberty Bank, National Association ("Liberty Bank"). (Defendants' SOF ¶ 3; Loan Guarantee Agreement as Exhibit A to Gary Sole Affidavit ("Sole Aff."); Docket No. 47). The Loan Program requires applicants to submit applications for approval to Pennsylvania Higher Education Assistance Agency, a governmental agency, doing business as American Education Services ("AES")[2]. (Defendants' SOF ¶ 4). AES served as the originator and servicer of the loans, and it had sole discretion and authority to approve a loan under the Loan Program. (Defendants' SOF ¶ 5). Liberty Bank served as the originating lender and funded loans approved by AES. (Defendants' SOF ¶¶ 5–6).

Provided that the loans met certain criteria and after a 30–day period, the loans were eligible for purchase by SLX. (Defendants' SOF ¶ 7). LEARN guaranteed the loans, as provided by the Loan Guarantee Agreement, and SLX's purchase included the LEARN default guarantee. (Defendants' SOF ¶¶ 8–9; Loan Guarantee Agreement ¶ 2). Defendant Xpress Loan Servicing acted as the servicer to SLX's loans. (Defendants' SOF ¶ 20). LEARN is a nonprofit entity, holding exempt Federal income tax status under section 501(c)(3) of the Internal Revenue Code. (Joint Stipulation ("Stipulation"); Docket No. 47). Between 2006 and 2010, LEARN paid claims for the benefit of SLX in excess of $40 million pursuant to the Loan Guarantee Agreement. (Defendants' SOF ¶ 11; Sole Aff. ¶ 12). Approximately $22 million of the $40 million constituted default payments relating to the Loan Program. (Supplemental Sole Aff.[3] ¶ 5;

*Richard Lee Thomas,* 09–6509; *Randy Scott Thomas,* 09–6762; *Barr,* 10–6141. (Docket No. 50).

**2.** AES was originally named as a Defendant in this adversary proceeding. A joint stipulation later dismissed AES. (Docket No. 49).

**3.** Federal Rule of Civil Procedure 56(e) allows the Court to permit a party to supplement an affidavit supporting summary judgment. FED. R.CIV.P. 56(e)(1). A supplemental affidavit of Gary Sole, Vice Present of Defendant SLX, is included with Defendants' reply in response

Docket No. 59). The Loan Program would not have been able to provide loans to students without the funding by LEARN. (Sole Aff. ¶ 12). LEARN has never paid a claim related to Plaintiff's loan. (Stipulated Facts ¶ 5).

After Plaintiff completed her Loan Program application, Liberty Bank funded the loan and SLX purchased the loan pursuant to the terms of the Loan Guarantee Agreement. (Defendants' SOF ¶¶ 12, 16–17). The Loan Program application included the following provisions, which Plaintiff agreed and acknowledged by submitting her application: The "loan is made pursuant to an educational program that is funded in whole or in part by Lutheran Education Assistance Resource Network, a non-profit corporation (Defendants' SOF ¶ 13; Application/Master Promissory Note ("Application") as Exhibit B to Sole Aff. ¶ L. 12); the "loan may be subject to the limitation on dischargeability in bankruptcy established by Section 523(a)(8) of the U.S. Bankruptcy Code (Defendants' SOF ¶ 14; Application ¶ L. 12); and that the loan proceeds would be used only for educational purposes (Defendants' SOF ¶ 15; Application ¶ M).

Plaintiff, along with numerous other former Silver State students,[4] filed a lawsuit against Defendants and other parties in the State Court of Cobb County ("State Court Suit") in 2008. (Defendants' SOF ¶ 21). The plaintiffs in the State Court Suit asserted claims relating to the operation and closure of Silver State, including claims for fraudulent misrepresentation, constructive fraud, Georgia RICO, and negligent misrepresentation. (Defendants' SOF ¶ 21; Civil Case No. 08–A–10868–1). The parties executed a confidential settlement agreement ("Confidential Settlement Agreement") to settle all claims in the State Court Suit on December 15, 2008.[5] (Defendants' SOF ¶ 22).

The Confidential Settlement Agreement included a release of any and all claims arising out of or relating to the operation or closure of Silver State, including actions against Defendants. (Defendants' SOF ¶¶ 23–24). The Confidential Settlement Agreement also included a provision assigning all of the plaintiffs' causes of action to SLX. (Defendants' SOF ¶ 26). The terms of the Confidential Settlement Agreement contained a specific covenant not to sue, which stated the Plaintiff was prohibited from "commencing, joining in, or voluntarily assisting in a lawsuit or adversary proceeding" against Defendants. (Defendants' SOF ¶ 25). In exchange for the above, SLX reduced Plaintiff's debt as specified in the Confidential Settlement Agreement. (Defendants' SOF ¶ 27).

Plaintiff asserts that there are two areas of material, disputed facts. First, Plaintiff contests the validity and legitimacy of the

---

to Plaintiff's assertion that the LEARN guarantee is a "sham" and that Defendants failed to establish any meaningful participation by LEARN in the Loan Program. Because the supplemental affidavit responds to Plaintiff's argument and clarifies Mr. Sole's earlier statement, consideration of the Supplemental Gary Sole Affidavit is proper.

4. Each of the other debtors in the consolidated adversary proceedings were also plaintiffs in the State Court Suit with the exception of *Randy Scott Thomas,* 09–6762. Randy Thomas was not a party to the State Court Suit, but

the Confidential Settlement Agreement is also relevant to his debt obligation because he serves as a guarantor on Richard Thomas's student loan. Richard Thomas was one of the plaintiffs in the State Court Suit.

5. The parties filed a copy of the Confidential Settlement Agreement under seal. (Docket Nos. 27 & 28). The affidavit of Caroline Johnson Tanner, counsel for SLX in the State Court Suit, authenticates the Confidential Settlement Agreement as a true and correct copy. (Caroline Johnson Tanner Affidavit; Docket No. 47).

LEARN loan guarantee under the Loan Guarantee Agreement. Secondly, Plaintiff avers that there was no actual guarantee on Plaintiff's loan. Plaintiff's declared factual disputes will be addressed in the relevant legal discussions.

## III. Legal Standard

In accordance with Rule 56 of the Federal Rules of Civil Procedure, applicable to this Court pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Material facts are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of establishing the right to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982). Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed.R.Civ.P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993). The "[o]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." *Leigh v. War-*

*ner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000); FED. R. CIV. P. 56(e).

Where the nonmoving party bears the burden of proof at trial, the burden can be satisfied if the moving party demonstrates the absence of evidence supporting the nonmoving party's case. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir.2004). In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. Conclusions of Law

The material facts are undisputed. Defendants are entitled to summary judgment. The debt falls within § 523(a)(8)(A)(i) because the Loan Program was funded in part by LEARN, a nonprofit institution. Under controlling Eleventh Circuit law, Plaintiff may only assert facts relevant to the *Brunner* test if she asserts any undue hardship defense.

### A. Plaintiff's debt falls within the nondischargeability provision of 11 U.S.C. § 523(a)(8)(A)(i).

Defendants have established all of the requisite elements set forth in the § 523(a)(8)(A)(i) exception to discharge which provides:

A discharge under section 727 ... does not discharge an individual debtor from any debt—

(8) unless excepting such debt from discharge under this paragraph would im-

pose an undue hardship on the debtor and the debtor's dependents, for—

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution

11 U.S.C. § 523(a)(8)(A)(i).[6] Defendants have established that they are entitled to judgment as a matter of law. This debt was made under a program funded in part by a nonprofit institution.

### 1. The Loan Program was funded in part by a nonprofit based on LEARN's guarantee.

■ Courts have interpreted the funding language in § 523(a)(8) to require a nonprofit or governmental unit to have a "... meaningful contribution to the provision of the loan, including the guarantee of the loan." *E.g.*, *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien)*, 419 F.3d 104, 105 (2d Cir.2005) (internal quotations omitted); *In re Sears*, 393 B.R. 678, 681 (Bankr.W.D.Mo.2008) (the nonprofit's obligation to cover defaulted loan was meaningful and satisfied the funding component of the loan program). A nonprofit's role is meaningful where it contributes to the availability of funds to students. *In re Pilcher*, 149 B.R. 595, 598 (9th Cir. BAP 1993); *In re McClain*, 272 B.R. 42, 46 (Bankr.D.N.H.2002).

In *In re Taratuska*, 2008 WL 4826279 (D.Mass. Aug. 25, 2008), the district court considered whether a nonprofit guarantee satisfied the funding requirement of § 523(a)(8). The district court found § 523(a)(8) to be applicable and that a guarantee by a nonprofit constitutes funding. *Id.* at *3. The district court explained that "courts that have interpreted this clause of the statute ... have uniformly found that loans made under any program funded in whole or in part by a nonprofit institution does encompass the role that nonprofit guarantors play." *Id.; see also In re O'Brien*, 419 F.3d 104, 106 (2d Cir. 2005).

Plaintiff concedes that as a matter of law a nonprofit guarantee can be a meaningful contribution to funding, thereby making § 523(a)(8)(A)(i) applicable to such a program. Plaintiff's argument, here, rests on Defendants' failure to establish that LEARN's guarantee was a meaningful part to the Loan Program. In Plaintiff's Response, she asserts the following: "Contrary to Defendants' assertion, an examination of the [Loan Guarantee Agreement] put forth by Defendants reveals that not one single dollar of LEARN money would ever be paid under a guarantee on a loan made under the [Loan Program]." (Plaintiff's Response, p. 7; Docket No. 54).

Plaintiff argues that her debt is not subject to § 523(a)(8)'s discharge exception

---

**6.** Section 523(a)(8)(A)(i) was an amendment to the Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Prior to BAPCPA, § 523(a)(8) of the Bankruptcy Code read as follows: (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or *made under any program funded in whole or part by a governmental unit or nonprofit institution*, or

for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. § 523(a)(8) (emphasis added). Although the statute has been expanded in subsections not relevant here, the current statutory language of § 523(a)(8)(A)(i)— *"made under any program funded in whole or part by a governmental unit or nonprofit institution"*—is identical and makes pre-BAPCPA analysis applicable.

because LEARN's involvement in the Loan Program is a "sham." Plaintiff asserts that the validity or legitimacy of LEARN's role in the Loan Program is a question of fact. Plaintiff offers paragraphs 1, 2.1, 2.b, and 5 of the Loan Guarantee Agreement to support her position that LEARN's role in the Loan Program is not meaningful. Plaintiff posits that paragraph 2.b of the Loan Guarantee Agreement amounts to a qualified guarantee because LEARN's liability is limited to the amount in the Designated Fund. Additionally, Plaintiff uses definitional paragraph 1 and paragraph 5.b to assert that the LEARN guarantee is manufactured and that LEARN incurs no risk because the guarantee pool was funded by loan fees paid by applicants.

The entire Loan Guarantee Agreement is in the record, and Plaintiff is correct in some of her assertions regarding the individual provisions of the agreement, but no issue of fact is presented. Plaintiff's assertions are merely hypothetical. The evidence before the Court demonstrates that the LEARN guarantee did fund the Loan Program. The supplemental affidavit of Mr. Sole specifies LEARN's payout for this Loan Program. Mr. Sole's first affidavit merely referenced a $40 million payout of any LEARN guarantee. Mr. Sole's supplemental affidavit states that LEARN has paid approximately $22 million dollars to the benefit of SLX under the Loan Guarantee Agreement in this Loan Program. (Sole Supp. Aff. ¶ 5; Docket No. 59). Further, the parties stipulated as to LEARN's nonprofit status. (Stipulation; Docket No. 47).

Plaintiff's argument is essentially identical to that of the debtor in *In re Drumm*, 329 B.R. 23 (Bankr.W.D.Pa.2005). There, the debtor posited that the "[nonprofit] did not make any meaningful financial contribution or take any meaningful financial risk such that it could be considered to have funded any educational program." *Id.* at 33. The mechanics of the nonprofit guarantee in *Drumm* are similar to LEARN's role under the Loan Guarantee Agreement. In *Drumm,* the bank fees charged to student applicants were remitted to the nonprofit's reserve account, and the nonprofit's obligation for payment upon default did not extend beyond the available balance of the reserve account. *Id.* at 33–34. The bankruptcy court even stated that the nonprofit did not take on a meaningful financial contribution or financial risk; however, the nonprofit's role in meaningfully procuring the loans was sufficient to find the debt nondischargeable under § 523(a)(8). *Id.* at 35. Here, at oral argument, Plaintiff averred that *Drumm's* procedural posture distinguishes it from this action because of the nonprofit's motion for summary judgment was unopposed and because the debtor was also seeking relief from judgment. The Court disagrees. The bankruptcy court's legal analysis of the issue is not affected by the debtor's default. *Id.* at 33.

Defendants' have satisfied the requisite statutory requirements of § 523(a)(8)(A)(i). LEARN's role as guarantor was meaningful under the Loan Program. The Court will not impose an additional requirement on Defendants that there be additional evidence of the risk to LEARN in its role as guarantor. It is immaterial that the funds used by LEARN included fees paid by applicants or students through the Loan Program. The provisions limiting LEARN's obligation to the total amount of such funds did not diminish LEARN's meaningful role in the Loan Program. The undisputed evidence establishes that LEARN performed as guarantor of the Loan Program in the approximate amount of $22 million. LEARN's guarantor role was meaningful and satisfies the statute's funding requirement.

### 2. The Loan Program was funded by LEARN.

Plaintiff's second argument for the inapplicability of § 523(a)(8)(A)(i) is based on the absence of payment by LEARN on Plaintiff's defaulted loan. The parties stipulated that LEARN has never paid a claim related to the student loan made to Plaintiff under the Loan Program for her enrollment at Silver State. (Stipulated Facts ¶ 5). This argument also fails as a matter of law. The statute refers to "any program" and does not reference an individual debtor's debt or a specific loan. 11 U.S.C. § 523(a)(8)(A)(i).

Plaintiff's debt qualifies under § 523(a)(8)(A)(i) because the loan was made as part of a program funded in part by a nonprofit institution. *E.g., In re Taratuska,* 2008 WL 4826279, 2008 U.S. Dist. LEXIS 93206 (D.Mass. Aug. 25, 2008) (explaining that the plain meaning of the statute provides that it is a program that must be funded by a nonprofit institution under this section, rather than a particular loan itself). "Congress used expansive language in its designation of which student loans are non-dischargeable [under § 523(a)(8)], indicating that the program pursuant to which the loan was made must be funded in part by a non-profit entity, not the loan itself." *In re McClain,* 272 B.R. 42, 46 (Bankr.D.N.H.2002) (citations omitted). LEARN served as the guarantor under the Loan Guarantee Agreement and meaningfully contributed to the funding of the Loan Program. Plaintiff's reliance of LEARN's performance as to Plaintiff's default debt is misplaced. The record establishes that LEARN funded the Loan Program, and § 523(a)(8)(A)(i) requires no more.

### 3. Plaintiff's lack of educational benefit does not make § 523(a)(8)(A)(i) inapplicable.

Plaintiff also posits that the allegedly wrongful acts by Silver State and Defendants leading to Silver State's closing should take this debt outside § 523(a)(8)'s exception to discharge. Plaintiff seeks to limit § 523(a)(8)'s reach to debtors who receive either the student loan funds or the educational benefit. (Plaintiff's Response, p. 22; Docket No. 54). Plaintiff asserts that she received neither the funds nor any educational benefit. *Id.* She argues that "fundamental fairness" requires an alternative outcome.

This legal argument fails based on the plain language of the statute and supporting policy. There are two policy bases for the nondischargeability of student loans. First, "legislative history indicates a Congressional policy of excepting discharge in those inequitable situations where debtors with superior education and employment skills were intentionally abusing the fresh start policies ... [of] the bankruptcy laws." *Hixson v. U.S. Dep't of Educ. (In re Hixson),* 450 B.R. 9 (Bankr.S.D.N.Y. 2011) (quoting *Correll v. Union Nat'l Bank of Pittsburgh (In re Correll),* 105 B.R. 302, 304 (Bankr.W.D.Pa.1989)). Although Plaintiff did not receive the full educational benefit here, the second policy basis for enacting the student loan nondischargeability statute was "to preserve the financial integrity of the loan system by assuring the availability of monies to students in the future." *In re Hixson,* 450 B.R. 9 (quoting *Wells v. Sallie Mae (In re Wells),* 380 B.R. 652, 659 (Bankr.N.D.N.Y. 2007)). Here, Plaintiff did benefit from accessibility to a student loan.

The student loan exception to discharge focuses on the kind of debt involved without any regard to the student's satisfaction of the educational services provided or the identity of the borrower. *See Salter v. Educ. Res. Inst. (In re Salter),* 207 B.R. 272, 275 (Bankr.M.D.Fla.1997) (holding that "the proper focus should be on the

kind of debt involved, rather than how the money was spent, or who was the borrower"); *Educ. Res. Inst., Inc. v. Varma (In re Varma)*, 149 B.R. 817, 818 (N.D.Tex. 1992) ("The relevant inquiry into the applicability of this section is the purpose of the loan, not the beneficiary of the education.").

■ Plaintiff's focus on the acts of Silver State is akin to the losing arguments advanced by co-signors on a student loan debt where they received no direct educational benefit. The statute provides that the nondischargeability provisions apply regardless of whether the debtor is the beneficiary of the education. *In re Pelkowski*, 990 F.2d 737, 741 (3d Cir.1993) (holding that "the language and structure of the statute reveal no intent to restrict its reach to student debtors for expenses for their own education"); *Kentucky Higher Educ. Assistance Auth. v. Norris*, 239 B.R. 247, 254 (M.D.Ala.1999) (holding that "[s]ection 523(a)(8) does not differentiate between a debtor who is a loan beneficiary and a debtor who is the parent of a loan beneficiary"); *In re Selmonosky*, 93 B.R. 785, 787 (Bankr.N.D.Ga.1988) (holding that " § 523(a)(8) applies to nonstudent co-signer debtors, as well as student debtors").

The language of section 523(a)(8) is unambiguous. *See, e.g., Hamblin v. Educ. Credit Mgmt. Corp. (In re Hamblin)*, 277 B.R. 676, 679 (Bankr.S.D.Miss.2002). Plaintiff's debt falls within the statutory provisions of § 523(a)(8)(A)(i). The stringent nondischargeability standard for student loans evidences Congress' intent to keep our student loan programs intact. *In re Hixson*, 450 B.R. 9, 2011 WL 1135160 (Bankr.S.D.N.Y. Mar. 24, 2011). Regardless of Silver State's acts of omissions, the expansive nature of the statutory language demonstrates Congress' intent to protect the student loan system and maintain the ability of future students to obtain funding to advance their education. *See Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D.Cal.1989) ("A loan program is affected just as much when a parent discharges a loan as when a student discharges a loan.").

There is no basis to create an equitable exception to § 523(a)(8) as Plaintiff argues. Any current or former causes of action against Silver State or Defendants are not the subject of this action. Plaintiff, along with other similarly situated students, initiated the State Court Suit and entered into the Confidential Settlement Agreement to resolve these claims. The outcome of that suit will be discussed in more detail below; however, claims against an educational provider or related entity are distinct from the strict requirements of § 523(a)(8)'s exception to discharge.

Defendants have established that this type of debt is subject to § 523(a)(8)(A)(i) as a matter of law.[7] Defendants' Motion does not seek a determination of whether the debt is nondischargeable. Defendants' Motion merely seeks a determination that discharge of Plaintiff's debt requires a determination by the Court of undue hardship. Plaintiff's defense is not before the Court at this time.

**B. Plaintiff may only assert facts relevant to a showing of undue hardship *under Brunner's* three-pronged test.**

■ Defendants' Motion also seeks judgment as to what facts may be asserted

---

**7.** Defendants also argue that the contractual provisions in the Loan Guarantee Agreement regarding the educational purpose of the loan and the § 523(a)(8) nondischargeability disclosure further support judgment in its favor.

A ruling on this argument is not required because of the Court's conclusion that Defendants sufficiently proved that § 523(a)(8)(A)(i) is applicable to Plaintiff's debt.

by Plaintiff within any undue hardship defense. Defendants seek to foreclose Plaintiff from using allegedly wrongful acts by Silver State or by Defendants in support of Plaintiff's potential undue hardship defense. Defendants base this preclusion on the terms of the Confidential Settlement Agreement in the State Court Suit. The terms of the Confidential Settlement Agreement included a reduction to Plaintiff's outstanding debt based on her release of any and all claims against Defendants arising out of the operation or closure of Silver State. Also, any remaining claims were assigned to Defendants. Plaintiff also agreed that she would not commence any action, including an adversary proceeding, based on the released claims.

■ Plaintiff strongly opposes Defendants' request to limit the facts [8], but her opposition is based on a broadened interpretation of Defendants' request. Plaintiff asserts that prebankruptcy waivers of discharge or stipulations of nondischargeability are generally unenforceable. Here, however, Defendants' position is more nuanced. Defendants seek to limit the scope of a potential undue hardship defense and related discovery based on the Confidential Settlement Agreement from the State Court Suit.

■ "[B]ankruptcy law anticipates that the debtor cannot form private agreements circumventing the statutory provisions that protect all parties in the collective action." *See* G–44 COLLIER ON

BANKRUPTCY 2.4.5 *Prebankruptcy Waivers of Bankruptcy Code Provisions.* Limiting a person's bankruptcy rights and remedies is generally unenforceable. *E.g., Lichtenstein v. Barbanel,* 161 Fed.Appx. 461, 468 (6th Cir.2005) ("a pre-petition stipulation in a state court action waiving a debtor's right to obtain a discharge of a specific debt in a future bankruptcy case is void because it offends the public policy of promoting a fresh start for individual debtors."). However, findings of facts and determinations of issues by other courts are afforded full faith and credit in bankruptcy court like all other courts. Further, a debtor may stipulate to the underlying facts outside of bankruptcy and then the bankruptcy court must examine those facts to determine whether a debt is dischargeable. *Klingman v. Levinson,* 831 F.2d 1292, 1296 n. 3 (7th Cir. 1987). Defendants concede that Plaintiff has not waived her ability to discharge the debt. Defendants merely seek limitation of the facts asserted in any undue hardship defense. Specifically, Defendants seek to preclude Plaintiff from asserting claims already asserted in the State Court Suit.

■ Here, because the Court has ruled that this debt fits within § 523(a)(8)(A)(i)'s exception to discharge, the applicable standard for asserting an undue hardship defense in the Eleventh Circuit is the three-part test provided first in *Brunner v. New York State Higher Education Services*

---

8. Plaintiff also asserts that the Court's earlier ruling denying Defendants' Motion to Dismiss (Docket No. 23) is *res judicata* or the law of the case. Under Plaintiff's theory, the Order denying Defendants' Motion to Dismiss prevents Defendants from asserting that Plaintiff is limited by the State Court Suit and Confidential Settlement Agreement in this Motion. Plaintiff's position is unfounded. The Order denying Defendants' Motion to Dismiss does not meet the requirements of *res judicata* be-

cause it was not a final order. *Holmes v. Donald,* 84 F.2d 188 (5th Cir.1936); *Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 572–73, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963) (a denial of motion to dismiss is not a final order; it is only an interlocutory ruling). Further, two different standards apply to motions to dismiss and motions for summary judgment. *Compare* FED.R.CIV.P. 12(b)(6) *with* FED.R.CIV.P. 56(a). Plaintiff's argument has no merit.

*Corp.,* 831 F.2d 395 (2d Cir.1987). *Hemar Ins. Corp. of Am. v. Cox (In re Cox),* 338 F.3d 1238, 1240 (11th Cir.2003) (adopting the *Brunner* test for undue hardship). The requirements under *Brunner* require a debtor to prove: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loan. *Id.* at 1241.

The Confidential Settlement Agreement left Plaintiff's bankruptcy and discharge rights intact. *Lichtenstein v. Barbanel,* 161 Fed.Appx. at 468. Any facts relevant to the *Brunner* test are not barred. For example, Plaintiff has a right to assert that Silver State's closing prevented her from attaining her certification. That fact is relevant to Plaintiff's current income and her opportunities for employment. Also, some courts have considered the premature closing of the educational provider within *Brunner's* good faith requirement. *E.g., Bedra v. Direct Loan Serv. Sys. (In re Bedra),* 405 B.R. 461 (Bankr.N.D.Ohio 2008). In *Bedra,* the court explained that:

> The requirement of good faith, as set forth in the Brunner Test, is sufficiently malleable to cover a wide array of conditions. However, the premature closure of a debtor's school is but one factor for a court to consider, and in this matter, cannot stand against those concerns already mentioned, particularly the Debtor's lack of serious effort to repay her student loan.

*Id.* at 465 (quoting *In re Gregory,* 387 B.R. 182, 189 (Bankr.N.D.Ohio 2008)). However, the specific alleged wrongful acts brought in the State Court Suit have been plead and settled. Re-litigating those facts is improper and outside the scope of this action. This adversary action and any undue hardship defense asserted by Plaintiff shall be limited to the facts relevant under the *Brunner* standard.

For the reasons stated herein, it is

**ORDERED** that Defendants' Motion for Partial Summary Judgment is hereby **GRANTED.**

**IT IS ORDERED.**