In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1091

JEFFREY BRILL,

*Plaintiff-Appellant,*

*v.*

TRANSUNION LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:15-cv-00300-slc — **Stephen L. Crocker**, *Magistrate Judge.*

ARGUED SEPTEMBER 9, 2016 — DECIDED OCTOBER 4, 2016

Before POSNER, MANION, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Credit reporting agencies prepare reports that provide information about a person's finances— such things as bill-payment history, loans, current debt, and other information (such as where the person lives and works and, in some cases, whether he or she has been sued or arrested). The information is intended to help lenders decide whether to extend credit or approve a loan and what interest rate to charge. Prospective employers, insurers, and owners

of rental property can obtain the credit reports from the agency.

It's important to debtors that they check their credit reports regularly, to ensure that the information in them is correct and that no fraudulent accounts have been opened in their name. A debtor who finds an inaccuracy can take steps to have it corrected. See "Credit Reports and Scores," www.usa.gov/credit-reports (visited October 4, 2016, as were the other websites cited in this opinion).

TransUnion, one of the three major American credit reporting agencies, prepared a credit report which revealed, on the basis of information that TransUnion had obtained from Toyota, that a man named Jeffrey Brill was in arrears on a 2013 extension of the lease of a car from Toyota. Brill told TransUnion that his signature on the lease extension had been forged by a former girlfriend named Kelly Pfeifer; that upon her signing the extension it had become her lease, not his; and that he therefore owed nothing to the lessor, Toyota. Invoking the Fair Credit Reporting Act he demanded that TransUnion "conduct a reasonable reinvestigation" to determine whose lease it was, Brill's or Pfeifer's. See 15 U.S.C. § 1681i(a)(1)(A). TransUnion responded by asking Toyota to confirm the accuracy of its report. Toyota did so, though apparently just by noting that the name of the lessee on the lease extension was Brill; it did not try, and was not asked by TransUnion to try, to determine whether the signature was a forgery.

Brill claims that TransUnion's investigation of whether he or Pfeifer had leased the car was not "reasonable" within the meaning of the section of the Fair Credit Reporting Act just cited, which provides (in the section cited in the previ-

ous paragraph and here amplified) that "if the completeness or accuracy of any item of information contained in a consumer's [e.g., Brill's] file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."

Brill contends that TransUnion did not conduct an adequate reinvestigation, which would (he argues) have required it to do more than just ask Toyota (as it had done) to confirm the accuracy of its report to TransUnion. The "more" might be for TransUnion to hire a handwriting expert to determine whether the signature on the lease extension was Brill's or Pfeifer's, or maybe for TransUnion to dispense with the expert and just ask the Toyota employees who had been involved in the negotiation of the lease extension to advise whether the signatures (the signature on the original lease and the signature on the extension) were of different persons or the same person. Brill contends that the signatures were *obviously* of different persons, but the contention cannot be evaluated because he hasn't submitted the signatures in the litigation.

He claims to have suffered adverse financial consequences from TransUnion's credit report, which showed him as a delinquent debtor on the car lease and—after he settled with Toyota, which he had also sued—added that his obligation had been written off as a bad debt, implying that Brill had limited financial resources.

His suit against TransUnion is based on the civil liability provisions of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681n(a), o(a), and p(a). The district court dismissed the suit (precipitating this appeal) for failure to state a claim, on the ground that TransUnion had no duty to verify the accuracy of Brill's signature on the Toyota lease, because Toyota, as the lessor, was in a better position to determine the validity of its own lease. That's to put it mildly. The lease extension that may have been signed by Pfeifer rather than Brill was a document created by Toyota. TransUnion had had nothing to do with it, which is why upon receiving Brill's challenge to the accuracy of its credit report it had asked Toyota to confirm (or deny) the accuracy of the lease purportedly signed by Brill. That was an appropriate procedure, especially as TransUnion couldn't readily locate any other document that might have resolved the issue. Cf. *Henson v. CSC Credit Services*, 29 F.3d 280, 287 (7th Cir. 1994).

But believing not without reason that Toyota's response confirming that he was the lessee was too perfunctory to hold up, Brill had sued Toyota; the parties had settled; and the terms of the settlement were to be confidential and have remained so. We not only have no idea of what those terms might be and therefore no idea whether Brill has succeeded in clearing the cloud on his credit (which if so would vitiate the present suit); we haven't seen the signatures on the lease extension, which are not in the record. It's odd for a party to withhold from the court evidence that it contends is conclusive in its favor, but that's what Brill has done.

A further problem with his suit is the difficulty, even with the aid of a handwriting expert, of determining whether two signatures are by the same person. Brill insists that

his signatures always include a middle initial, D, and the signature on the lease extension omitted the D. But of course if Brill signed the lease extension but wanted to "frame" Pfeifer as the signer, he had only to omit his middle initial and cry forgery. It happens also that handwriting analysis is expensive, see, e.g., *DocExaminer: Forensic Document Laboratory*, http://docexaminer.com/pages/faq.html; *Forensic Document Analysis: Fee Schedule: How Much Does it Cost?*, http://expertdocumentexaminer.com/cost.html–and often inconclusive when one of the signatures isn't genuine, for then the similarities or differences between them may be attributable to fraud or some other contrivance. Forcing a credit reporting agency to hire a handwriting expert in every case of alleged forgery would impose an expense disproportionate to the likelihood of an accurate resolution of the dispute over whether it was indeed forgery. And so the Fair Credit Reporting Act's provisions for identity theft, 15 U.S.C. §§ 1681c-1, c-2, sensibly ask persons who believe they are or may be victims of credit fraud to report to the police before turning to the credit reporting agency. As far as we know, Brill didn't do that.

A similar puzzle concerns another related suit brought by Brill—against Pfeifer for defrauding him by using a forged signature to "steal" the Toyota lease from him. But all that we're told about the suit is that Brill obtained a default judgment. In other words, Pfeifer didn't fight—and that is not a confession of forgery.

Nor has Brill indicated how he could prove forgery in the present suit, against TransUnion. As the plaintiff he has the burden of proof, but rather than bear that burden he invokes the statutory duty of reinvestigation by the credit reporting

agency to shift the burden of proof to TransUnion, insisting that TransUnion should have done more than check with Toyota, as it did: should have hired a handwriting expert, or analyzed the handwriting without bothering to hire a handwriting expert, or evaluated Toyota's procedures for verifying the identity of customers, or interviewed the Toyota employees who had been involved in the extension of the lease. As to the first suggestion, handwriting experts are expensive and often produce inconclusive results. See Saul Bienenfeld, "Handwriting Analysis: Science or Art Form? A New York Federal Judge Weighs in," https://www.linkedin.com/pulse/handwriting-analysis-science-art-form-new-york-judge-saul-bienenfeld.

The second suggestion, discussed and rejected earlier in this opinion–using untrained people in lieu of a handwriting expert–is undeveloped and unsupported. And the last two points are particularly weak because once he sued Toyota, Brill was in a superior position to TransUnion to evaluate Toyota's procedures for verifying customers' identity and to interview (as by deposing) Toyota employees in order to determine whether they had followed the prescribed procedures in Brill's case. And it might well be unduly burdensome for TransUnion to ask Toyota to identify, and put TransUnion in touch with, the employees. In any event TransUnion could not expect Toyota to accede to such a request. No company willingly tells another company: "you want to interview my employees in order to see whether they violated rights of someone [Brill] who sued me? No problem." Instead it says: "Forget it." Brill's suit against Toyota was his chance to use discovery to interview Toyota employees. It's too late now. It was his decision to settle his

suit against Toyota rather than use discovery procedures to explore the issue of forgery in depth.

As for Brill's argument that TransUnion should have forwarded the documents he sent to Toyota (he sent TransUnion a copy of his signature from 2009 and a list of ways in which it differed from the signature on the lease) he's provided no evidence for his claim that the signatures clearly differ, and therefore no reason to think that sending the signature to Toyota would have helped.

Further on Brill's strident claim that the two signatures are *obviously* of different people: neither signature is in the record, though Brill had both documents as well as other samples of his signature. Again we find him refusing to present a case, instead insisting that he need provide no evidence to support any of his allegations.

And last, supposing that the signature on the lease extension was determined to be forged (presumably by Pfeifer), what next? Because of the secrecy surrounding Brill's settlement with Toyota, we know none of its terms, though we can surmise that Brill obtained some money. Toyota has reported that it has treated the $8,795 owed it by Brill under the lease extension (if indeed he was the signatory of that document) as "bad debt," implying forgiveness. It would not be right to award him damages against TransUnion that duplicated relief he'd obtained from Toyota, but that is something we can't determine because he will not reveal the terms of the settlement nor, as far as we're aware, has he asked Toyota to do so.

We agree with the district judge that Brill has failed to make a plausible claim against TransUnion. The dismissal of his suit is therefore

AFFIRMED.