In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-2373

UNENSAIKHAN CHULUUNBAT,

*Plaintiff-Appellant,*

*v.*

EXPERIAN INFORMATION SOLUTIONS, INC., *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-00164 — **Charles P. Kocoras**, *Judge.*

_____

No. 20-2392

JUAN RODAS,

*Plaintiff-Appellant,*

*v.*

TRANSUNION DATA SOLUTIONS LLC,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-07706 — **Sharon Johnson Coleman**, *Judge.*

_____

No. 20-2775

ANIBAL MOLINA,

*Plaintiff-Appellant,*

*v.*

TRANS UNION, LLC,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-07538 — **John Z. Lee**, *Judge.*

————————————

No. 20-2776

EVERARDO HOYOS,

*Plaintiff-Appellant,*

*v.*

EQUIFAX INFORMATION SERVICES, LLC
and TRANSUNION LLC,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-00408 — **John Z. Lee**, *Judge.*

————————————

No. 20-3000

OLAMIDE SOYINKA,

*Plaintiff-Appellant*,

*v.*

EQUIFAX INFORMATION SERVICES, LLC,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-01773 — **Gary Feinerman**, *Judge*.

———————————

No. 20-3351

ADEL AMORAH,

*Plaintiff-Appellant*,

*v.*

EQUIFAX INFORMATION SERVICES, LLC
and TRANSUNION DATA SOLUTIONS LLC,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-07534 — **Manish S. Shah**, *Judge*.

———————————

No. 20-3368

EDWARD COWANS,

*Plaintiff-Appellant,*

*v.*

EQUIFAX INFORMATION SERVICES, LLC,
and TRANSUNION DATA SOLUTIONS LLC,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-08168 — **Andrea R. Wood**, *Judge.*

————————————

ARGUED APRIL 22, 2021 — DECIDED JULY 15, 2021

————————————

Before WOOD, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* In these consolidated cases, plaintiffs owe consumer debts they claim are not owned by the creditors listed on their credit reports. They approached the consumer reporting agencies—defendants here—and requested an investigation of their claims. The consumer reporting agencies contacted the purported creditors for verification that they owned the debts, which the creditors confirmed. Although informed of these confirmations, plaintiffs did not believe that the consumer reporting agencies investigated the claims as thoroughly as 15 U.S.C. § 1681i of the Fair Credit Reporting Act (FCRA) requires, so they sued. But in each case the district court either dismissed their claims or granted judgment on the pleadings to the creditors.

We are tasked in this FCRA context with discerning the sometimes-murky boundary between "law" and "fact." We hold that plaintiffs' allegations that the creditors did not own their debts are not factual inaccuracies that the consumer reporting agencies are statutorily required to guard against and reinvestigate, but primarily legal issues outside their competency. So we affirm the district court's decision in each case.

## I

In each of these disputes (as well as those pending resolution on the outcome of this case), the facts present a similar pattern. Each plaintiff incurred a consumer credit card debt.[1] The debts were purportedly sold and assigned to other companies—creditors—and this change appeared on plaintiffs' credit reports.[2] The creditors then attempted to collect the debts from the plaintiffs.

Rodas, Molina, and Amorah were sued by Midland, their alleged new creditor, who demanded payment. They defended those lawsuits by claiming that Midland did not own their debts, demanding proof of ownership, and requesting

---

[1] Unensaikhan Chuluunbat and Juan Rodas incurred credit card debts from Citibank. Chuluunbat and Everardo Hoyos incurred debts from Comenity Capital Bank. Anibal Molina incurred a credit card debt to Synchrony Bank. Hoyos also incurred a debt to Webbank. Olamide Soyinka and Edward Cowans incurred debts on credit cards issued by Credit One Bank. Finally, Adel Amorah incurred a credit card debt to Barclays Bank Delaware.

[2] The new creditors were Cavalry SPV 1, LLC for Chuluunbat, Midland Funding, LLC for Rodas, Molina, Hoyos, and Amorah, and LVNV Funding, LLC for Soyinka and Cowans.

arbitration. In each case, Midland moved to voluntarily dismiss the lawsuit before arbitration was set to commence.

Chuluunbat, Hoyos, Soyinka, and Cowans—plaintiffs who were not sued—sent letters to their creditors, contending that the creditors did not own their debts. These creditors either did not respond or replied that they owned the debts but did not provide any assignment agreement from the previous creditor.

After dismissal of these lawsuits (or, if the plaintiff was not sued, after the collection attempts), the plaintiffs contacted the "Big Three" consumer reporting agencies: Experian, TransUnion, and Equifax. The plaintiffs requested that the consumer reporting agencies reinvestigate the accuracy of their credit reports to determine if the purported creditors owned these debts. In response, the consumer reporting agencies sent an inquiry to each creditor to verify ownership. The creditors all confirmed that the reports were correct and that they owned the plaintiffs' debts. The creditors did not, however, produce the original sale or assignment agreement in any case. After receiving this confirmation, the consumer reporting agencies informed the plaintiffs that no further steps would be taken to investigate.

Plaintiffs then sued the consumer reporting agencies, claiming that the presence of the allegedly inaccurate debt ownership information in their credit reports and the consumer reporting agencies' failure to fully investigate their claims violated § 1681e(b) and § 1681i of the Fair Credit Reporting Act. 15 U.S.C. § 1681, *et seq*. In each case, the district court entered judgment on the pleadings or dismissed the lawsuits. Relying on *Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020)—which held that a consumer's defense to

a debt is a legal question to resolve in an action against the creditor, not a duty imposed on the consumer reporting agencies by the FCRA—each court agreed that the plaintiffs did not plead the type of inaccuracies in their credit reports that the consumer reporting agencies can correct.

In each of the consolidated cases the district court reasoned differently but came to the same conclusion. As to Rodas and Cowans, the court determined that whether the creditors owned the debts was a question of law and therefore categorically outside of the consumer reporting agencies' statutory duties. As for Chuluunbat, the court instead decided that ownership of a debt was a mixed question of law and fact, but it also concluded that the consumer reporting agencies were not required to reinvestigate the claim. For Soyinka, Molina, Hoyos, and Amorah, the court eschewed a rigid distinction between law and fact and focused on the institutional competency of the consumer reporting agencies to resolve the claims. Whether the creditors owned the debts was a question outside the competencies of the consumer reporting agencies, the court decided, and not an inaccuracy to correct through reinvestigation.

Plaintiffs appealed, and we consolidated the cases for review. In some cases, the district court granted judgments on the pleadings, and in others motions to dismiss, but our review of either disposition is de novo. *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017).

## II

The Fair Credit Reporting Act "imposes duties on consumer reporting agencies and furnishers in a manner consistent with their respective roles in the credit reporting

market." *Denan*, 959 F.3d at 294.[3] Furnishers—the creditors here—provide consumer credit data to the consumer reporting agencies, and the consumer reporting agencies reflect that information on a consumer's credit report. *Id.* The statutory scheme primarily tasks furnishers with providing accurate information to the consumer reporting agencies, but 15 U.S.C. § 1681e(b) also requires that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of" information in credit reports. And if a consumer disputes "the completeness or accuracy of any item of information contained in" a credit report, a consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). A threshold requirement for claims under both sections is that there must be an inaccuracy in the consumer's credit report.

In *Denan v. Trans Union LLC*, this court held that "inaccurate information under § 1681i … mean[s] factually inaccurate

---

[3] Recently the Supreme Court dismissed some FCRA claims on standing grounds in *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2021 WL 2599472, at *3 (U.S. June 25, 2021). After reviewing this opinion and the plaintiffs' complaints here, we remain satisfied we have jurisdiction. In *TransUnion*, some of the plaintiffs had stipulated that their credit reports were not disseminated to third-party businesses. *Id.* The Court concluded that even if the information on the plaintiffs' credit reports was misleading, the plaintiffs could not show a concrete injury because the reports were not distributed to third parties. *Id.* By contrast, the plaintiffs in these cases have all alleged that their credit reports were accessed by third parties. The Court in *TransUnion* concluded that it "ha[d] no trouble" finding standing for other plaintiffs who claimed dissemination of allegedly inaccurate credit reports, analogizing to the tort of defamation. 2021 WL 2599472, at *11. We conclude that the plaintiffs here have similarly alleged a concrete injury.

information, as consumer reporting agencies are neither qualified nor obligated to resolve legal issues." 959 F.3d at 296. *Denan* recognized a dichotomy between factual inaccuracies that consumer reporting agencies are statutorily obligated to reinvestigate, and "legal inaccuracies" which are outside the competency of the consumer reporting agencies. *Id.*[4] Other circuits employ this same framework for interpreting § 1681i. *See Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008).

The plaintiffs argue that whether the creditors were assigned, and now own, their debts is a factual question that triggers the twin statutory obligations. They rely on *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 720–21 (7th Cir. 2003), for the proposition that whether parties intended to assign something is a question of fact to be decided by a jury in court. By the plaintiffs' account, all that the consumer reporting agencies need to ascertain is whether a purchase and sale agreement for each of the plaintiffs' debts exists. If one does not, the plaintiffs argue, the consumer reporting agencies

---

[4] Plaintiffs failed to cite *Denan* in their opening brief. This is surprising given *Denan*'s recency, its relevance to the present case, and that every district court opinion under review mentioned the decision. Parties have an obligation to alert the court to relevant authority, regardless of whether it supports their positions. *See Jackson v. City of Peoria*, 825 F.3d 328, 331 (7th Cir. 2016); *Mannheim Video, Inc. v. Cnty. of Cook*, 884 F.2d 1043, 1047 (7th Cir. 1989) ("counsel may not hide from virtually controlling cases, only later to argue that the omission was due to a scintilla of difference between the already decided cases and the one being litigated.")

could conclude that the creditor does not own the debt. They see requesting the purchase and sale agreement as a straightforward factual inquiry.

A clear line has not been drawn between legal and factual inaccuracies in the FCRA context. Decisions of this court and other circuits do provide helpful guideposts. The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law. In *Denan*, for example, the plaintiff did not dispute whether a debt existed or its amount, but instead contended he was not required to pay the debt because it was "legally invalid." 959 F.3d at 293. We concluded that the consumer reporting agencies were not required to determine that the debt was invalid as a matter of law because "[o]nly a court can fully and finally resolve the legal question of a loan's validity," and therefore, "no reinvestigation by Trans Union could have uncovered an inaccuracy in [the plaintiff's] credit report." *Id*. at 295, 297. Similarly, in *DeAndrade*, a plaintiff-debtor did not dispute that he had taken out a mortgage to pay for windows or that the mortgage was in the wrong amount, but instead she argued that the mortgage did not meet certain legal requirements. 523 F.3d at 68. Like in *Denan*, the court in *DeAndrade* concluded that this question was beyond the scope of the statutory requirements. *Id*.; *see also Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019) (unpublished) (holding that consumer reporting agencies were not required to reinvestigate a plaintiff's claim that disability discharge applications had legally entitled him to stop payments).

In contrast, examples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened

an account or incurred a payment. *Carvalho*, 629 F.3d at 891. These questions do not require the consumer reporting agencies to make any legal determinations about the facts or legal judgments. A legal question may also be resolved as a matter of fact if a tribunal—such as a court or arbitrator—has adjudicated the matter. *See Dennis v. BEH–1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008); *Scheel-Baggs v. Bank of Am.*, 575 F. Supp. 2d 1031, 1042 (W.D. Wis. 2008). Taking notice of a previously resolved legal dispute involves some knowledge of the legal impact of court decisions, but it does not require the consumer reporting agency to make any legal determinations about the underlying claim.

These examples show that the central question is whether the alleged inaccuracy turns on *applying* law to facts or simply *examining* the facts alone. Consumer reporting agencies are competent to make factual determinations, but they do not reach legal conclusions like courts and other tribunals do. *Denan*, 959 F.3d at 295. Courts sometimes employ different actors to help answer certain questions, but the ultimate result is a legal determination (e.g., that a party is liable). That means whether something is considered a factual question in a court does not resolve whether it is an inaccuracy under the FCRA. Accordingly, *Chemetall*—in which this court held, applying Illinois law, that the intent to enter an assignment is a question of fact in court—does not decide this case.

The claims here differ from the purely legal disputes at issue in *Denan*. Although the plaintiffs in *Denan* were explicitly attempting to collaterally attack the legality of their debts through the FCRA's reinvestigation provision, the plaintiffs in these consolidated cases contest who owns their debts, not their legal validity.

But whether a debt was assigned—absent a previous decision by a tribunal—is a question that requires a legal determination, placing it outside the competency of a consumer reporting agency. The plaintiffs in these cases do not contest their debts' existence or that the debts are in improper amounts. Rather, as with a pure challenge to a debt's legal validity, the plaintiffs here question the legal relationship of different parties to these debts, which is a task for a court. Contrary to the plaintiffs' assertions, any investigation into whether the creditors were assigned the debts involves more than just determining if an assignment agreement exists. It also involves interpreting the legal validity of any assignment agreement. An assignment is a creature of law: to have a valid assignment parties must meet certain legal requirements. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 317 (1981) (defining assignment). Determining if those requirements are met requires making a legal judgment, which the consumer reporting agencies are not statutorily required to do.

The plaintiffs contend that would create a double standard: consumer reporting agencies must investigate claims by *debtors* that they do not owe a debt but not claims that *creditors* do not own a debt. This argument misses differences between these two situations, however, and reads our conclusion too broadly.

Sometimes, when a consumer claims a debt is not owed, that presents a factual question. This could occur if the consumer argues that the furnisher has factually misidentified him—say with the wrong social security number. But consumer reporting agencies will not be required to reinvestigate such claims if the investigation primarily requires them to make a legal judgment or is otherwise outside of their

competency. *See Brill v. TransUnion LLC*, 838 F.3d 919, 921 (7th Cir. 2016) (holding that consumer reporting agency was not required to hire handwriting expert to determine whether plaintiff's signature was forged on loan agreement as plaintiff claimed).

The alleged inaccuracies here necessarily involve interpreting legal rights to a debt and making legal judgments. In each of these cases, the consumer reporting agencies reached out to the creditors and asked them to confirm ownership of the debts. Each creditor did so. If the plaintiffs presented court judgments to the consumer reporting agencies showing that the legal ownership of their debts have been adjudicated, the investigation may have been factual in nature. But their broad assertion that the creditors do not own their debts necessarily required the consumer reporting agencies to make a legal determination about whether the plaintiffs or the creditors are right about the ownership of the debts.

The plaintiffs here are not left without recourse. They could confront the creditors who are in the best position to respond to assertions that they do not own the plaintiffs' debts. *See Brill*, 838 F.3d at 921. Another avenue for the plaintiffs is 15 U.S.C. § 1681i(c), which allows consumers to make notations of their disputes on their credit reports. The consumers could use this provision to notify future employers or creditors that they dispute the ownership of these debts. What these plaintiffs cannot do, though, is place the burden for determining whether their debts were validly assigned onto the consumer reporting agencies, where it does not belong.

### III

Because the plaintiffs in these cases asked the consumer reporting agencies to make primarily legal determinations, they have not stated claims under the Fair Credit Reporting Act, so the judgment of the district court in each case is AFFIRMED.