20-3073(L)
*Mader v. Experian*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: October 27, 2022
Decided: January 4, 2023

Nos. 20-3073, 21-2171

MICHAEL MADER,

*Plaintiff-Appellant,*

*v.*

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee.*[*]

Appeal from the United States District Court
for the Southern District of New York
No. 19-cv-3787, Lorna G. Schofield, *Judge.*

Before:     LOHIER, CARNEY, and NATHAN, *Circuit Judge*s.

Consolidated appeal from orders entered in the United States District Court for the Southern District of New York (Schofield, *J.*) granting defendant-appellee's motion for summary judgment and denying plaintiff-appellant's motion for an indicative ruling on a motion to set aside the judgment.  Plaintiff alleges that his

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

private educational loan was discharged in bankruptcy.  He sued defendant-appellee under the Fair Credit Reporting Act (FCRA) for reporting the loan was due and owing.  The district court concluded the loan was not discharged in bankruptcy and later declined to set aside summary judgment when plaintiff proffered newly discovered evidence.  We conclude plaintiff-appellant's claim is not cognizable under the FCRA.

AFFIRMED.

ADAM R. SHAW (George F. Carpinello, Jenna C. Smith, *on the brief*), Boies Schiller Flexner LLP, Albany, NY, *for Plaintiff-Appellant*.

MEIR FEDER (Kerianne N. Tobitsch, Jack Millman, *on the brief*), Jones Day, New York, NY, *and* John A. Vogt, Jones Day, Irvine, CA, *for Defendant-Appellee.*

NATHAN, *Circuit Judge*:

The Fair Credit Reporting Act ("FCRA") requires reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer credit report.  15 U.S.C. § 1681e(b).  The question in this case is whether Experian violated this requirement when it reported that plaintiff-appellant Michael Mader continued to carry debt for a private educational loan after he went through chapter 7 bankruptcy in 2013.

Notably, the bankruptcy court in 2013 did not opine on whether Mader's private educational loan was in fact discharged.  Instead, it entered an order

stating (unhelpfully for present purposes) that it discharged "all dischargeable debts." Appellant's Redacted Appendix ("App'x") 159. As a result, Mader's allegation that his Experian report contains an inaccuracy hinges on the resolution of an unsettled legal question. Namely, it requires deciding whether Mader's educational loan is non-dischargeable under section 523(a)(8)(A)(i) of the Bankruptcy Code. Pursuant to that provision, an educational loan is typically not dischargeable in bankruptcy if it was "made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8)(A)(i). Determining whether Mader's private loan fits within this provision requires both resolving a contested statutory question and applying the resulting statutory construction to disputed facts regarding the structure of Navient's loan program. Experian's inclusion of this debt on Mader's credit report is inaccurate only if the end result of that legal analysis reveals that his private loan is dischargeable.

We hold that this kind of alleged *legal* inaccuracy is not cognizable under the FCRA. We therefore affirm the dismissal of Mader's complaint, albeit on a different basis than that relied upon by the district court.

## BACKGROUND

In March 2008, Mader took out an $18,000 educational loan from Sallie Mae, Inc., a private, for-profit corporation. Mader used this loan to attend the Reformed Theological Seminary in Orlando, Florida. Because the seminary was a non-Title IV school, *see* 20 U.S.C. § 1070 (authorizing federal assistance for students attending covered schools), Mader was ineligible for Stafford loans or other federal student aid. Sallie Mae issued the private loan under what it called the "Excel Grad" loan program. This program was later assigned to Navient Solutions, LLC, along with the rest of Sallie Mae's student loan portfolio.

In 2012, Mader filed for bankruptcy in the Southern District of New York and listed his Excel Grad loan in his petition. On April 16, 2013, the bankruptcy court issued a final decree of discharge, which stated that Mader was "released from all dischargeable debts." App'x 159. An "explanation of bankruptcy discharge" attached to the order stated that "[m]ost, but not all, types of debts are discharged," but that "[d]ebts for most student loans" are not discharged. App'x 160.

The following month, Navient sent Mader a letter asserting that his Excel Grad loan was not discharged and that he "remain[ed] responsible for repaying

the entire remaining balance." App'x 45. Mader and Navient executed a loan modification agreement and Mader made payments on the loan between 2013 and 2017. The loan modification agreement and these payments were communicated to Experian and reflected in Mader's credit report, which in January 2019 indicated that $20,890 was due on the loan, including a past-due balance of $8,519.

Nevertheless, on April 29, 2019, Mader brought this action against Experian in district court in the Southern District of New York under the FCRA and its state analog, the New York Fair Credit Reporting Act ("NYFCRA"), for continuing to include the Excel Grad loan on his credit report. Before commencing this action, Mader did not dispute the debt with Experian, nor did he challenge it with Navient or in the bankruptcy court.

After discovery, Experian moved for summary judgment. In support of its motion, Experian pointed to Mader's loan promissory note, which states in a conclusory fashion that his loan was issued under a program "that includes Stafford Loans and other loans and which is funded in part by non-profit organizations, including governmental units" and is therefore generally "not dischargeable in bankruptcy." App'x 147. Experian also submitted a sworn declaration by a Navient employee attesting, in nearly identical language, to the

5

same. Meanwhile, in opposing summary judgment, Mader submitted a 2014 investor prospectus that Navient filed with the Securities and Exchange Commission describing the Excel Grad loan program as privately funded and separate from Navient's federally funded loan programs.

The district court granted summary judgment in favor of Experian. *Mader v. Experian Info. Sols., LLC*, No. 19-cv-3787, 2020 WL 4273813 (S.D.N.Y. July 24, 2020). Relying primarily on the declaration from the Navient employee, the district court determined that Mader's loan was non-dischargeable, and that therefore its inclusion on his credit report was not an inaccuracy. The district court similarly denied Mader's motion for reconsideration, at which point Mader filed a notice of appeal. Later, proffering newly discovered evidence, Mader moved for an indicative ruling for relief from judgment, which the district court also denied. Mader then filed a notice of appeal from the indicative ruling and his two appeals were consolidated into the present case.

**STANDARD OF REVIEW**

"We review a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in [his]

6

favor." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (citation omitted). We "affirm a grant of summary judgment only if there is no genuine issue of material fact and the prevailing party was entitled to judgment as a matter of law." *Id.* (citation omitted).

## DISCUSSION

Mader's operative complaint alleges that Experian violated section 1681e(b) of the FCRA. Pursuant to that provision, credit reporting agencies "shall follow reasonable procedures to assure maximum possible accuracy of the information" in the reports they prepare. 15 U.S.C. § 1681e(b).[1]

Mader claims that his Experian credit report is inaccurate because it continues to list his outstanding student debt to Navient following his chapter 7 bankruptcy. He argues that the Excel Grad loan was discharged in bankruptcy because, as a private loan, it is not exempted from discharge under section 523(a)(8) of the Bankruptcy Code. That provision defines as non-

---

[1] The NYFCRA likewise states that credit reporting agencies "shall maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates." N.Y. Gen. Bus. Law § 380-j(e). Because the language of the NYFCRA and the FCRA is substantially similar, "the two statutes must be construed in the same way." *Scott v. Real Est. Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999). Thus, for purposes of this appeal, our conclusions regarding the FCRA also dispose of Mader's NYFCRA claims.

7

dischargeable, among other things, "an educational . . . loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8)(A)(i).

As discussed below, the district court engaged with this question by asking whether there was a genuine factual dispute as to the nature of the funding of the Excel Grad loan program. If this were the proper mode of analysis, we would hold that the district court erred in concluding the factual issue was undisputed. But we affirm on the alternative ground that the legal inaccuracy alleged in this case is not cognizable under the FCRA.

## I. The District Court's Analysis

The district court assumed that the kind of inaccuracy alleged by Mader was cognizable under the FCRA and proceeded to engage with the question of whether the Excel Grad loan was non-dischargeable under section 523(a)(8)(A)(i) of the Bankruptcy Code. In that analytical mode, the district court reasoned that "as long as a private loan is made under a program funded in part by a nonprofit or governmental unit, it is non-dischargeable." *Mader*, 2020 WL 4273813, at *3 (citing *O'Brien v. First Marblehead Educ. Res., Inc.* (*In re O'Brien*), 419 F.3d 104, 105–06 (2d

8

Cir. 2005)).  Assessing the record, the district court concluded that Mader failed to rebut the declaration from a Navient employee stating that the Excel Grad loan was made under a "program" that also included Stafford loans guaranteed or funded by non-profits or the government.  *Id.*  The district court did not address or acknowledge the prospectus that Mader filed.

We think this conclusion was in error.  Competing evidence in the record does raise a genuine and material dispute as to whether Mader's Excel Grad loan was made under a program that included governmental funding.  While a Navient employee declared, using the same language as contained in the promissory note, that Mader's loan was issued "under a program that was funded, in part, by non-profit organizations, including governmental units," App'x 41, the prospectus that Mader submitted—which the district court did not address—cut the other way.  That document indicated that Excel Grad loans were made under a separate program funded only with private funds.

Furthermore, as we discuss below, determining whether Mader's loan was discharged requires interpreting the section 523(a)(8)(A)(i) exception to bankruptcy discharge.  While the district court did not explicitly interpret the clause "made under any program funded in whole or in part by" the government

9

or a non-profit, 11 U.S.C. § 523(a)(8)(A)(i), it held that Experian did not need to specifically identify the qualifying program at all. *Mader*, 2020 WL 4273813, at *3. The district court did not address, for example, whether Navient itself might be the relevant "program." Any holding that Navient is such a program would be in significant tension with our recent decision in *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021). In *Homaidan*, we rejected an interpretation of section 523(a)(8)(A)(ii) that would have drawn "virtually all student loans within [its] scope" and "swallowed up" the other subsections of section 523(a)(8), "which delineate specific categories of nondischargeable educational debt." *Id.* at 602. Were we to resolve this case on the ground relied upon by the district court, we would have to ensure that our interpretation of "program" is narrow enough to avoid transforming section 523(a)(8) into "a catch-all for educational loans." *Id.* at 603.

While we disagree with the district court's assessment of the record and do not endorse its interpretive approach, we "may affirm . . . on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir. 2017) (citation omitted). As we explain next, we do so

here based on our conclusion, as Experian argued in the alternative below and before us, that the FCRA does not require credit reporting agencies to adjudicate legal disputes such as the post-bankruptcy validity of Mader's educational loan debt.

## II.     Cognizability of Mader's Claim Under Section 1681e of the FCRA

This appeal ultimately turns on a question of statutory interpretation and therefore we begin "where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).  The relevant provision of the FCRA states that when preparing credit reports, credit reporting agencies "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  Thus, to prevail on a section 1681e claim against a consumer reporting agency, it is necessary for a plaintiff to establish, among other things, that a credit report contains an inaccuracy.  *See Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021).  In *Shimon*, we held that a credit report is inaccurate "either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an

11

adverse effect." *Id.* (citation omitted). But we have not addressed whether the kind of inaccuracy alleged by Mader is cognizable under the FCRA.

Because the term "accuracy" is not defined in the FCRA, we look to its ordinary meaning found in "contemporary dictionary definitions" from 1970 when the FCRA was enacted. *El Omari v. Int'l Crim. Police Org.*, 35 F.4th 83, 88 (2d Cir.), *cert. denied*, 143 S. Ct. 214 (2022). The word "accuracy" is defined as "freedom from mistake or error" or "conformity to truth or to some standard or model." Webster's Third New International Dictionary 13–14 (1971). This definition requires a focus on objectively and readily verifiable information. This is consistent with our prior holding requiring that an inaccuracy be "patently incorrect or . . . misleading," *Shimon*, 994 F.3d at 91 (citation omitted).

The "inaccuracy" Mader alleges does not meet this statutory test because it evades objective verification. There is no bankruptcy order explicitly discharging this debt. Navient continued to treat the debt as outstanding following Mader's bankruptcy. And, for that matter, so did Mader.

Instead, the accuracy of Experian's reporting that the debt was still owed depends on whether it is "dischargeable," which itself depends on whether section 523(a)(8)(A)(i) applies to Excel Grad loans. And that question, finally,

12

turns on the unsettled meaning of the word "program" within section 523(a)(8)(A)(i) of the Bankruptcy Code. Courts have taken different approaches as to the appropriate level of specificity required when identifying a qualifying "program" and have reached different conclusions as to the applicability of the section 523(a)(8)(A)(i) exception to Navient's private educational loans. For example, at least one bankruptcy court has found that an Excel loan was non-dischargeable by seemingly treating its for-profit loan originator, the Nellie Mae Corporation, as the relevant program. *See Drumm v. New Eng. Loan Mktg. Ass'n* (*In re Drumm*), 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005). Meanwhile, other bankruptcy courts have required Navient to produce evidence of a specific qualifying program with a "concrete relationship" to a non-profit or governmental funder. *Mazloom v. Navient Sols., LLC* (*In re Mazloom*), No. 18-60206-06, 2022 WL 950932, at *6–7 (Bankr. N.D.N.Y. Mar. 29, 2022) (declining to follow the district court's summary judgment opinion in this case); *Teran v. Navient Sols., LLC* (*In re Teran*), 638 B.R. 620, 625–26 (Bankr. N.D. Cal. 2022) (same).

But these bankruptcy courts also denied summary judgment to the debtors and proceeded to trial on the question of the applicability of section 523(a)(8)(A)(i) to the specific loans at issue. Here too, ascertaining whether Mader's debt was

discharged would require resolving the factual dispute over the funding and structure of the Grad Excel program. As we concluded above, the Navient declaration and the prospectus create a triable question of fact as to this dispute. The bespoke attention and legal reasoning required to determine the post-bankruptcy validity of Mader's debt means that its status is not sufficiently objectively verifiable to render Mader's credit report "inaccurate" under the FCRA.

Every other circuit to have considered an analogous question has agreed: inaccuracies that turn on legal disputes are not cognizable under the FCRA. Some circuits have reached this conclusion by holding, as we do, that claims under the FCRA require factual inaccuracies to be actionable. For example, the First Circuit concluded that a debtor's claim that his credit report contained an inaccurate report of a legally invalid mortgage "crossed the line between alleging a factual deficiency that [the credit reporting agency] was obliged to investigate pursuant to the FCRA and launching an impermissible collateral attack against a lender by bringing an FCRA claim against a consumer reporting agency." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008). Likewise, the Ninth Circuit held that "collateral attacks on the legal validity of . . . debts" cannot satisfy the

"inaccuracy" element of an FCRA claim. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891–92 (9th Cir. 2010). The Tenth Circuit reached the same conclusion but based its reasoning on the "reasonable procedures" element, which, the circuit concluded, requires only that credit reporting agencies "look beyond information furnished to them when it is inconsistent with the [credit reporting agency's] own records, contains a facial inaccuracy, or comes from an unreliable source." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015). In that case, the Tenth Circuit held that, as a matter of law, reasonable procedures do "not require [credit reporting agencies] to resolve legal disputes about the validity of the underlying debts they report." *Id.* at 1242. Finally, the Seventh Circuit reached a similar conclusion drawing on both a distinction between factual and legal inaccuracies and an analysis of what the "reasonable procedures" element requires. *See Denan v. Trans Union LLC*, 959 F.3d 290, 293–96 (7th Cir. 2020).

Consistent with these decisions, we hold that Mader has failed to allege an inaccuracy within the plain meaning of section 1681e(b) of the FCRA. The

15

unresolved legal question regarding the application of section 523(a)(8)(A)(i) to Mader's educational loan renders his claim non-cognizable under the FCRA.

To be clear, this holding does not mean that credit reporting agencies are never required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts. For instance, other courts have held that misreporting the clear effect of a bankruptcy discharge order on certain types of debt is a cognizable inaccuracy under the FCRA. *See, e.g.*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944–45 (11th Cir. 2021) (home mortgage); *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 769 (D. Minn. 2020) (consumer debt). And as a result of a settled class action lawsuit, Experian agreed to adopt new procedures for tracking and reporting the effects of chapter 7 bankruptcies on various types of consumer debts. *See White v. Experian Info. Sols., Inc.*, No. 05-cv-1070, 2008 WL 11518799, at *7–12 (C.D. Cal. Aug. 19, 2008) (order approving class action settlement).

Of course, "[a] clear line has not been drawn between legal and factual inaccuracies in the FCRA context." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567–68 (7th Cir. 2021). As cases like *Losch* and *Morris* show, if a legal question is sufficiently settled so that the import on a particular debt is readily and

16

objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports. This no doubt "involves some knowledge of the legal impact of court decisions." *Id.* at 568. What the FCRA does not require, however, is that credit reporting agencies resolve unsettled legal questions like the one at issue here.

Finally, we note that Mader is not without options to resolve the dispute that forms the basis for the derogatory note on his credit report. Quite the contrary. Mader could dispute the debt directly with Navient, which knows the nature of the loan program better than anyone else and is itself under an FCRA obligation to report accurately to credit reporting agencies. *See* 15 U.S.C. § 1681s–2 (establishing that "furnishers of information to consumer reporting agencies" have a responsibility to "provide accurate information" and to "investigate . . . disputed information"); *see also* 12 C.F.R. § 1022.41(a) (defining "accuracy" for furnishers as, in part, "correctly . . . [r]eflect[ing] the terms of and liability for the account"). And if Navient stands by its conclusion that the debt was not discharged, Mader can move in the bankruptcy court for clarification of the discharge order. *See* 11 U.S.C. § 105; Fed. R. Bankr. P. 7001(6), (9); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268–69 (2010) ("[T]he Bankruptcy

17

Rules require a party seeking to determine the dischargeability of a student loan debt to commence an adversary proceeding by serving a summons and complaint on affected creditors."). If, for example, the bankruptcy court specifically determined that Mader's loan was discharged, or if it were settled as a matter of law that Navient's Excel Grad loans like the one that Mader carries are dischargeable, and a credit reporting agency continued to report such a loan as due and owing, that would present a very different case in terms of cognizability under the FCRA.

## CONCLUSION

Because we hold that the kind of legal inaccuracy alleged by Mader is not cognizable as an "inaccuracy" under the FCRA, we **AFFIRM**, on an alternative ground, the district court's order granting summary judgment in favor of Experian. Accordingly, we **DISMISS** as moot Mader's appeal of the denial of his motion for an indicative judgment.

18